UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| NANCY ANTCZAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: 3:09-CV-82 |
| ) | (VARLAN/SHIRLEY) |
| ASHLAND DISTRIBUTION COMPANY & ) | |
| ASHLAND SPECIALTY CHEMICAL CO., et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on Defendant Ashland Inc.'s Motion for Summary Judgment [Doc. 42] and Defendant Illinois Tool Works Inc.'s Motion for Summary Judgment [Doc. 44]. Defendant Ashland, Inc. ("Ashland"), which claims to have been sued incorrectly as Ashland Distribution Company & Ashland Speciality Chemical Co., and defendant Illinois Tool Works, Inc. ("ITW" and, together with Ashland, "defendants"), which claims to have been sued incorrectly as Fibre Glass-Evercoat Company and ITW SprayCore, move the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there are no genuine issues of material fact to be decided by the trier of fact. Plaintiff Nancy Antczak has not filed a response to the motions for summary judgment, and the time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2. The motions for summary judgment are thus ripe for the Court's consideration, and for the reasons explained herein, the Court will grant the motions.

**I.   Background**

Plaintiff was employed by Mastercraft Boat Company ("Mastercraft") in Vonore, Tennessee, from July 30, 2007, to February 21, 2008 [Doc. 1 ¶ 2]. Plaintiff worked in the department known as "lamination deck one" [Doc. 42-1 at 10].[1] As an employee in lamination deck one, plaintiff "applied fiberglass to the boats—to the boat mold" as part of the process of building boats for Mastercraft" [*Id.*]. The boats under construction would arrive at plaintiff's work area and alternating layers of fiberglass and "resin" would be applied [*Id.* at 10–11]. Plaintiff would use a roller to smooth the sheets of fiberglass being applied to the boat and insure that there were no air bubbles between the layers of fiberglass [*Id.* at 10–12, 25–26]. The resin was sprayed onto the boats by employees using spray guns that were connected by hoses to the ceiling of the building [*Id.* at 37–38]. Plaintiff did not know what the hose was plugged into or what product was sprayed from the spray guns:

> A.   You know, and where that hose started from, where they got the spray from, I really don't – don't know.

---

[1] In support of its motion for summary judgment, Ashland submits, among other things, the transcript of a recorded interview of plaintiff with counsel for defendants [Doc. 42-1]. Ashland submits that the interview occurred in the presence of plaintiff's counsel and was recorded by a certified court reporter and notary republic who prepared, signed, and notarized the transcript of the interview [Doc. 43 at 4 n.1]. As the transcript of the interview is being offered by Ashland against plaintiff and because the recorded interview statement is plaintiff's own statements, given in the presence of her counsel to questions posed to her by counsel for defendants, the Court finds such admissible pursuant to Rule 801(d)(2).

> Q. So what they were spraying came down from a hose that connected to the – toward the ceiling someplace?
>
> A. Right. Yeah. It was on like maybe a pulley I guess you would call it, you know, so they could have – you know, they needed to get around the boat, you know, so . . .
>
> Q. So you didn't see – and I think you mentioned this – but you didn't see, for example, what that hose was plugged into so you could see –
>
> A. I –
>
> Q. what it was spraying?
>
> A. – don't know. I remember hearing a pump but I – and I – so I'm assuming it was something off to the side where they were pumping it through, you know, the – the tubing, but I don't really have any idea.
>
> Q. Did you ever see Mastercraft's receipt of materials to make the boats, like the resin or the hardener, did you ever see them coming in the door?
>
> A. No. No.
>
> Q. So your experience with the resin was what came out of the spray gun?
>
> A. Pretty much, yeah. Yeah.

[*Id.* at 37–38].

Plaintiff commenced this products liability action,[2] alleging that "[d]uring the course and scope of her employment at Mastercraft Boat Company, the Plaintiff was exposed to airborne industrial chemicals containing styrene,"

> a chemical known to cause irritation of the respiratory tract, irritation of the mouth, nose, throat, and lungs, and is listed by IARC as a possible human carcinogen; and is capable and known to cause injuries in humans, such as sustained by the Plaintiff, when humans are exposed to the chemical in levels to which the Plaintiff was exposed.

[Doc. 1 ¶¶ 3, 6]. She claims that defendants "supplied products containing styrene to Mastercraft" [*Id.* ¶ 7] and that defendants failed to warn plaintiff of the risks associated with exposure to styrene [*Id.* ¶ 12].

## II.  Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears

---

[2] A product liability action under Tennessee law is defined as follows:

> all actions brought for on or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantial legal theory in tort or contract whatsoever.

*See* Tenn. Code Ann. § 29-28-102(6).

4

the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court does not weigh the evidence, judge the credibility of witnesses, nor determine the truth of the matter. *Id.* Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

The Court notes again that plaintiff has not responded to defendants' motions for summary judgment. Non-response standing alone, however, is not determinative of whether summary judgment is appropriate. *Aquent, LLC v. United States*, No. 08-15275, 2011 U.S. Dist. LEXIS 40132, at *1 (E.D. Mich. Apr. 13, 2011) (discussing the former version of Rule 56 and noting that "the non-movant's failure to respond does not relieve the movant of its burden to establish that 'the moving party is entitled to judgment as a matter of law'"). Relevant to a party's failure to respond is Rule 56(e), which provides:

5

>   (e) If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>   . . .
>
>   (2) consider the fact undisputed for purposes of the motion;
>
>   (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2); 56(e)(3).[3]  Accordingly, the Court has examined the motions and supporting materials to determine if summary judgment is appropriate.  *See Aquent*, 2011 U.S. Dist. LEXIS 40132, at *1 (taking the same approach with respect to a plaintiff's motion for summary judgment where the sole defendant failed to respond).

## III. Analysis

Ashland argues that summary judgment is appropriate because plaintiff "cannot and has not identified any Ashland product to which she allegedly was exposed;" "has not disclosed any expert witnesses in this case;" "cannot establish her product liability claims against Ashland under Tennessee law without expert testimony;" "has not disclosed any expert testimony on the issue of general causation—an essential element of a toxic tort claim;" and "has not disclosed any expert testimony on the issue of specific causation—an essential element of a toxic tort claim" [Doc. 43]. ITW adopts the grounds asserted by

---

[3]The Advisory Committee Notes for the 2010 amendments indicate that the Rule was revised to preclude summary judgment from being granted by default, even "if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56 advisory committee's note (discussing when a party fails to properly address another party's assertion of fact as required by 56(c)).

Ashland in support of its motion for summary judgment and submits additional evidence [Doc. 44]. Although defendants raise several issues in support of their arguments for summary judgment, the Court finds that the first argument is dispositive of this action.

In order to recover on her product liability action, plaintiff must prove that the product allegedly manufactured or supplied by defendants was "in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller." *Johnson v. Volvo Truck Corp.*, No. 2:07-CV-277, 2010 U.S. Dist. LEXIS 145, at *4 (E.D. Tenn. Jan. 4, 2010) (quoting Tenn. Code Ann. § 29-28-105). "[T]he failure or malfunction of the device, without more, will not make the defendant liable. A plaintiff must show that there was something wrong with the product, and trace the plaintiff's injury to the specific defect." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) (citation omitted).

"The burden is on the plaintiff to identify a defect in the product." *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1051 (E.D. Tenn. 2007) (citation omitted). Inherent in that burden is the burden to identify the product that allegedly caused the injury. *See In re Aredia and Zometa Prods. Liab. Litig.*, No. 3-06-MD-1760, 2010 WL 5136142, at *2 (M.D. Tenn. Dec. 7, 2010) ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendant supplied the product which caused the injury."); *Watkins v. Safety-Kleen Sys., Inc.*, No. 5:08-CV-224-KSF, 2009 U.S. Dist. LEXIS 65008, at *8–9 (E.D. Ky. July 27, 2009) ("To state a claim for product liability, a plaintiff must identify the product that caused the injury."); *Collins v. Ansell Inc.*, No. 3:98-CV-259-H, 2003 WL 22769266, at *2 (W.D. Ky. Nov. 19, 2003) ("The threshold

7

requirement of a products liability claim is identification of a product or instrumentality which causes an injury."); *Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484–85 (M.D. Fla. 1992) ("[I]dentification of the product that caused the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law."); *Whaley v. Rheem Mfg. Co.*, 900 S.W.2d 296, 300 (Tenn. Ct. App. 1995) ("It almost goes without saying that the identified product defect must be the proximate cause of the plaintiff's injury.").

Here, defendants are correct that plaintiff has failed to identify a product manufactured or supplied by defendants to which plaintiff allegedly was exposed while working to apply resin to boat molds during her employment at Mastercraft. Plaintiff admitted during an interview with defense counsel:

> Q. Your lawsuit alleges that while you were working at Mastercraft you came into contact with various chemicals. You've described – well, what chemicals do you believe you came into contact with or in what process?
>
> A. While working there, they just called it resin, you know, but then I came to find out that they also can call it hardener or it's mixed with a hardener. And I don't really know, to be honest with you, what the names of the chemicals are.

[Doc. 42-1 at 19–20]. Plaintiff also admitted:

> Q. So do you have any idea who manufactured the products that were used in that resin sprayer?
>
> A. I have no idea. No idea. I'm sorry.

8

[*Id*. at 99]. Likewise, in plaintiff's responses to interrogatories propounded by ITW, plaintiff failed to identify the manufacturer, seller, or supplier of the products to which she was allegedly exposed [*See* Doc. 42-2].

Plaintiff also stated during her interview that she was not involved in purchasing or ordering any of the chemicals or products used at Mastercraft [Doc. 42-1 at 99]. She further did not know where the resin was prepared or put together before being sprayed out of the spray gun [*Id*. at 85]. And plaintiff did not perform the spraying of the resin; instead, other employees on her shift did so [*Id*. at 24, 33, 85]. Nor did plaintiff know where the resin came from in the Mastercraft facility [*Id*. at 86]. Finally, plaintiff could not identify the product used to clean the rollers she used in relation to the resin [*Id*. at 26].

In addition, plaintiff failed to respond to ITW's requests for admission, and pursuant to Rule 36 of the Federal Rules of Civil Procedure, the matters therein are deemed admitted. Fed. R. Civ. P. 36(a)(3). Request numbers 1, 2, 3, and 10 admit that plaintiff cannot identify any product of ITW that she was exposed to during her employment with Mastercraft [Doc. 44-1].

In sum, based upon the evidence in the record, plaintiff has not and apparently cannot identify any product manufactured or supplied by defendants to which she was allegedly exposed. Without such information, it is impossible for her to establish that such product was in a defective condition or was unreasonably dangerous, as is required for a products

9

liability action. Accordingly, defendants are entitled to summary judgment as a matter of law.[4]

**IV. Conclusion**

For the reasons explained herein, the Court will grant Defendant Ashland Inc.'s Motion for Summary Judgment [Doc. 42] and Defendant Illinois Tool Works Inc.'s Motion for Summary Judgment [Doc. 44]. Accordingly, all of plaintiff's claims will be **DISMISSED**, and the Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[4]The Court need not address defendants' remaining arguments as the failure to identify a product allegedly manufactured or supplied by defendants was in a defective condition or unreasonably dangerous at the time it left their control is dispositive of all of plaintiff's claims.